Hough, J.
The judgment being based upon a verdict directed by the court of common pleas after *471 the introduction of plaintiff’s testimony, the action taken by the court is analogous to that upon demurrer, and in considering the case this court will accept as true the testimony introduced and shown in the record, as well as the admissions in the pleadings and the admissions made in the statements of counsel.
The answer admits the collision and that the deceased was injured thereby and died two days later, and testimony appears tending to show that the deceased died of the injuries received from the collision. The answer denies all negligence on the part of the defendant, and in the second defense in substance pleads contributory negligence, and it may be said that contributory negligence is not or will not become a defense in the absence of a showing of negligence on the part of the defendant. In other words, contributory negligence presupposes negligence on the part of the other party.
It is clear from the record that the deceased had a right to cross the tracks at that point; while a private crossing, it was a crossing that was intended to be used in gaining access to the Wheeler farm. The defendant claims that there was nothing to obstruct the view, and no reason why decedent should not have seen the ear when it was 300 feet away. There is no testimony to gainsay that statement, and that being true, the converse must also be true, that the agents in charge of the car could and should have seen the deceased on the track when the car was 300 feet away.
There is no testimony tending to show that the car was going at an illegal rate of speed in the open country; neither does it appear that the whistle, bell or gong was not sounded; nor does it appear *472 for what reason the automobile stopped on the track, as it is clear that the deceased, had he looked, could have seen the approaching car 300 feet away, and that the motorman in charge of the car, had he looked, could have seen the automobile standing across the track from a distance 300 feet away.
After the collision the electric car continued down the track a distance of 700 feet, and perhaps considerably farther, before it was stopped, and we find in the record the statement of counsel for the defendant that a car such as this under like conditions could ordinarily have been stopped within a distance of 450 or 500 feet. Under the conditions that existed it is our opinion, under the doctrine heretofore announced by this court, that it was the duty of the motorman to have used all means at hand to have stopped his car when he discovered the automobile across the track, which he could have seen and should have seen when his car was 300 feet away. It being his duty to set his brakes, emergency and otherwise, the natural consequence would be that his car would at least slacken its speed materially before it struck the automobile. We refer to the pronouncement of the court in the case of Railroad Co. v. Kassen, 49 Ohio St., 230.
Assuming, then, that the speed of the car should have been slackened or retarded before the collision actually took place, we are at a loss to comprehend, if the motorman was doing his full duty to prevent the collision, how it was that he was not able to bring his car to a standstill for a distance of more than 700 feet after the collision took place, in the face of the statement of defendant’s counsel that the car could ordinarily have been stopped within 450 *473 or 500 feet. This in onr opinion raised a question for the jury to determine upon consideration óf ail the facts.
It is claimed by the defendant that the deceased met with his injuries when the collision took place, and the contention of the plaintiff is, as we understand it, that the real injuries sustained by the deceased, and from which he died, occurred later, either when the automobile, which he occupied, struck one of the trolley poles, or when he was finally thrown clear of the wreckage and into the ditch along the track. We are unable from the record to answer this question. It is a question entering into the realm of probability, depending on all the circumstances, all the facts, and is essentially a question for the jury, to be submitted to them after all the illumination possible by way of testimony, argument of counsel, and instructions on the part of the court; and while it is not the province of the jury to speculate upon the happening or guess upon the existence of controverted events it is within their province and it often happens that juries are called upon to determine facts and issues when the proof is entirely circumstantial. If the circumstances are probable, logical, and reasonable, a basis is formed upon which the jury may properly be consigned the responsibility of settling and determining the issue, and this court has very recently made a pronouncement closely related to the present question under discussion in proposition three of the syllabus in the case of Vignola v. New York Central Rd. Co., 102 Ohio St., 154, where it is held:
“In order that an issue should be required to be submitted to the jury, it is not essential that there *474 be sueb a conflict in the testimony of different witnesses as makes it necessary for the jury to determine disputes or questions of veracity. That is not the only province of the jury. Where there is no conflict in the testimony, but nevertheless the unconflicting testimony discloses a variety of circumstances from which different minds may reasonably arrive at different conclusions as to the ultimate facts shown by the evidence, it is the duty of the jury to determine such ultimate fact. When the decisive ultimate fact is undisputed, there is presented simply a question of law.”
We believe the record before us presents a set of circumstances, the determination of which presents proper matters for the jury’s consideration, and that the court erred in disposing of the same as a matter of law.
The judgment of the court of appeals will be reversed, and the cause remanded to the court of common pleas for a new trial.

Judgment reversed.

Johnson, Wanamaker, Robinson, Jones and Matthias, JJ., concur.